# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lynn Havelka,                  :
          Appellant    :
                      :
      v.                :    No. 1032 C.D. 2019
                      :    Argued: February 10, 2020
Retirement Board of      :
Allegheny County        :


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE J. ANDREW CROMPTON, Judge


**OPINION BY JUDGE BROBSON**     **FILED:  April 20, 2020**


Lynn Havelka (Appellant) appeals from a decision of the Court of Common Pleas of Allegheny County (common pleas), dated June 26, 2019, which affirmed the decision of the Retirement Board of Allegheny County (Board), issued February 21, 2019 (Final Determination).  In the Final Determination, the Board denied Appellant's administrative appeal, challenging the manner in which the Board calculated her retirement benefits.  For the following reasons, we affirm.

The facts of this case are undisputed.  Appellant was employed by Allegheny County (County) as a detective within the County's District Attorney's office for nearly 38 years.  (Final Determination, Finding of Fact (F.F.) No. 4.)  During her employment, the County compensated Appellant for overtime work (more than 40 hours per week) at one and one-half times her normal rate of pay pursuant to a collective bargaining agreement (CBA) between the County and an association of County detectives.  (*Id.*, F.F. No. 14; Reproduced Record (R.R.) at 82a.)  Initially,

the CBA required Appellant to accept her overtime compensation in the form of compensatory time, but, beginning around the year 2000, the CBA allowed Appellant to elect to receive either monetary overtime pay or compensatory time. (Final Determination, F.F. No. 21.) From the beginning of her employment until approximately 2013, Appellant accumulated unused compensatory time. (*Id.*, F.F. No. 15.) From 2014 to 2018—the last four years of Appellant's employment—Appellant chose to receive regular monetary payments for overtime instead of compensatory time. (*Id.*, F.F. No. 27.)

Appellant retired from her employment with the County, and her last day of employment was January 19, 2018. One week later, the County issued its final payment to Appellant, which consisted of $3,594.00 in regular pay for her final pay period, $15,454.14 for accumulated, unused vacation and personal time, and $51,596.13 for 1,148.5 hours of accumulated, unused compensatory time.[1] (*Id.*, F.F. No. 14; R.R. at 70a-71a.) In making the lump-sum payment for compensatory time, the County acted pursuant to the CBA, which provides that "[t]he County shall pay [detectives] for all accumulated unused compensatory time at separation from employment." (R.R. at 82a.)

On February 15, 2018, the Board issued a Retirement Quotation approving retirement benefits for Appellant. (Final Determination, F.F. No. 10; R.R. at 72a.)

---

[1] A copy of Appellant's final pay stub shows that, as part of the same payment, she received an additional $47,440.59 for 1,056 hours of sick pay. (R.R. at 71a.) Unlike the other amounts paid on that date, the sick pay amount is not reflected in the Board's salary report, and the parties do not mention or discuss it in their briefs. The record contains no information about why that amount was included in the final payment, how it was derived, or why it was not discussed in the parties' briefs on appeal.

In doing so, the Board applied Section 1712(a)(1) of the Second Class County Code (Code),[2] which provides, in relevant part:

> [T]he retirement allowance paid . . . shall equal fifty per centum of the amount which would constitute the average monthly *compensation* as *received* by the county employe during the highest twenty-four months of the last four (4) years of his employment or two years on a bi-weekly pay basis in which period of time the said county employe made monthly or bi-weekly contributions into the retirement fund prior to his or her retirement.

(Emphasis added.) Section 1701 of the Code, 16 P.S. § 4701, provides the following relevant definitions for purposes of, *inter alia*, Section 1712(a)(1):

> "**Compensation**," . . . [p]ickup contributions plus salary or wages *received* per day, weekly, bi-weekly, semi-monthly, monthly, annually, or during an official term year.
>
> . . . .
>
> "**Pickup contributions**," regular contributions which are made by the county on behalf of county employes for current service in accordance with subsection (a.1) of [S]ection 1708[ of the Code, 16 P.S. § 4708(a.1) (relating to County payment of employe's mandatory retirement contribution)].

(Emphasis added.)

When the Board calculated Appellant's "average monthly compensation" for the purpose of determining her retirement benefit, it included the final payment on January 26, 2018, as one of the "highest" payments within Appellant's last four years of employment. (Final Determination, F.F. No. 8; R.R. at 68a.) It did not, however, include the $51,596.13 compensatory time lump-sum payment as part of that

---

[2] Act of July 28, 1953, P.L. 723, *as amended*, 16 P.S. § 4712(a)(1). The Code, 16 P.S. §§ 3101-6302, established the Board and empowers it to administer the retirement system for County employees. *See* Sections 1702-1706 of the Code, 16 P.S. §§ 4702-4706; *Ret. Bd. of Allegheny Cty. v. Colville*, 852 A.2d 445, 446 n.1 (Pa. Cmwlth. 2004).

amount. (*Id.*, F.F. No. 9.) Because it excluded the compensatory time payment, the Board used a compensation amount of $19,048.14 for the January 26, 2018 payment (reflecting the regular pay plus payment for unused vacation and personal time). (R.R. at 68a.)

After receiving the Board's calculation of her retirement benefit, Appellant sought recalculation of her benefit before the Board, arguing that the Board should have included the compensatory time payment in its calculation of her average compensation. Pursuant to the Local Agency Law, 2 Pa. C.S. §§ 551-555, 751-754, the Board held a hearing at which the parties developed a complete record. The Board then issued the Final Determination, denying Appellant's administrative appeal. In the Final Determination, the Board adopted the proposed findings and conclusions of Hearing Officer Mary McGinley, who concluded that the compensatory time payment is not "compensation" as defined in Section 1701 of the Code, because it was (1) paid as a single lump sum instead of regularly and (2) earned (*i.e.*, accumulated) before the 2014-2018 averaging period the Board used. (*See* Final Determination, Conclusions of Law (C.L.) Nos. 29, 32-34, 37.) Appellant appealed the Final Determination to common pleas, which affirmed without taking additional evidence.[3]

---

[3] Common pleas, in its order affirming the Final Determination, stated that "the *arbitration award* is CONFIRMED." (R.R. at 238a (emphasis added).) It appears, however, that the Board did not engage in arbitration with respect to Appellant. The record in this matter references a 2007 arbitration between the association of County detectives and the County, but that past arbitration merely established the manner in which the County compensates detectives for unused compensatory time. (*See id.* at 20a, 83a-86a.) Thus, although arbitration is tangentially at issue here, we see no reason for common pleas to have reviewed an "arbitration award," and we will modify common pleas' order accordingly.

4

On appeal to this Court,[4] Appellant argues that the Board committed an error of law in excluding the compensatory time payment from its calculation of her average compensation. In support of this contention, Appellant asserts that the language of Section 1712(a)(1) of the Code unambiguously requires the Board to include the compensatory time payment in calculating her average compensation because the compensatory time payment is "compensation" and was "received" at the time it was paid to Appellant (*i.e.*, during the compensation averaging period the Board used in its calculation). Appellant also argues that, under the CBA, the compensatory time payment was not due to be paid until Appellant's separation from employment, regardless of when the compensatory time was earned. Accordingly, Appellant insists the Board must allocate Appellant's compensatory time to her last day of employment rather than to the dates on which it was earned. Finally, Appellant points out—and the Board admits—that the Board has recently *included* compensatory time lump-sum payments in calculations of two other detectives' average monthly compensation.[5]

In response, the Board first argues that the plain language of Section 1712(a)(1) of the Code requires the exclusion of the compensatory time payment from the calculation of Appellant's average monthly compensation.

---

[4] Where, as here, common pleas does not take additional evidence, "our scope of review of a local agency's adjudication is limited to determining whether constitutional rights were violated, an error of law was committed, or the necessary factual findings are supported by substantial evidence." *Kuziak v. Borough of Danville*, 125 A.3d 470, 474 n.2 (Pa. Cmwlth. 2015). Because Appellant has asserted no violation of constitutional rights or lack of substantial evidence, we review the Final Determination for an error of law only.

[5] The Board admits, without explanation, that it took that opposite action in recent cases—an action the Board itself describes as "improper[]" and "a . . . mistake." (Final Determination, C.L. No. 40; Board's Br. at 23.) Although the Board's invidious action is deeply unsettling, prior treatment of other retirees is not relevant to our decision in the instant case, which is controlled by the Code.

This, the Board asserts, is because the compensatory time (1) does not meet the definition of "compensation" because it was not paid at regular intervals and (2) was accumulated (*i.e.*, earned and logged) well before Appellant's averaging period. Second, the Board argues in the alternative that, assuming the language of the Code is ambiguous, construing the Code as Appellant proposes would produce results inconsistent with the General Assembly's intent and would contravene important public policy considerations favoring consistency, fairness, and predictability in pension system administration.

When interpreting a statute, this Court is guided by the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501-1991, which provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). "The clearest indication of legislative intent is generally the plain language of a statute." *Walker v. Eleby*, 842 A.2d 389, 400 (Pa. 2004). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). "A statute is ambiguous or unclear if its language is subject to two or more *reasonable* interpretations." *Bethenergy Mines, Inc. v. Dep't of Envtl. Prot.*, 676 A.2d 711, 715 (Pa. Cmwlth.) (emphasis added), *appeal denied*, 685 A.2d 547 (Pa. 1996). Moreover, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. § 1921(a). Thus, no provision of a statute shall be "reduced to mere surplusage." *Walker*, 842 A.2d at 400. Finally, it is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa. C.S. § 1922(1).

Section 1712(a)(1) of the Code uses the defined term "compensation" to describe the set of payments to an employee that forms the basis of the Board's

calculation of retirement benefits. As the parties emphasize, however, the averaging calculation includes only compensation that is "received" during the averaging period (*i.e.*, the highest 24 months of the last four years of employment).[6] These two requirements for the inclusion of a payment—that it is "compensation" and that it was "received" during the averaging period—are textually and conceptually distinct, and each is a necessary condition for a payment's inclusion in the averaging calculation.

Accordingly, we first analyze whether the compensatory time at issue constitutes "compensation" under Section 1712(a)(1) of the Code. Section 1701 of the Code sets forth a two-prong definition of "compensation." To meet the definition, a payment must be either a "pickup contribution[]" or "salary or wages *received* per day, weekly, bi-weekly, semi-monthly, monthly, annually, or during an official term year." 16 P.S. § 4701 (emphasis added). Here, it is undisputed that the compensatory time is not a "pickup contribution" as defined in the Code. Accordingly, we focus, as the parties do, on the second prong of the "compensation" definition: that salary or wages must be "received" at discrete, recurring times to qualify as "compensation." *See id.*

The County made the compensatory time payment to Appellant upon her separation from employment, as provided in the CBA. Under the CBA, the accrued

---

[6] The parties focus on the modifying term "*average monthly* compensation," and they appear to view that term as controlling either the scope of what counts as "compensation" or whether compensation was "received" within the averaging period. We disagree. The Code independently defines the term "compensation" without those modifying words, and Section 1712(a)(1) of the Code independently limits included payments to those "received" in the averaging period. The term "average monthly" is added, not to duplicate the statute's already-clear language regarding what compensation should be included *ab initio*, but to convert compensation paid at various intervals into a standardized *monthly average* from which to derive a *monthly* benefit.

7

compensatory time was essentially a form of deferred compensation that Appellant could have used in either of two forms—(1) as time off work at any time before her retirement, or (2) through conversion into a cash payment at separation from employment. Accordingly, we cannot agree with Appellant that she "received" the salary or wages represented by her compensatory time only once the monetary payment was made pursuant to the CBA. The payment was merely a monetization of salary or wages that Appellant had already "received" over many years of working overtime. The compensatory time payment did not cause Appellant to "receive[]" that compensation all over again. As Appellant herself concedes, she *already* "own[ed]" the earned compensatory time at the time of the lump-sum payment, because the accrued time became available for her use as time off pursuant to the CBA. (Appellant's Br. at 16.)

To accept Appellant's view—that "received" in Section 1701 of the Code refers only to the monetary payment—would ignore the obvious fact that the Appellant's compensatory time became *available* to her (in the form of additional time off) long before the cash payment occurred. Moreover, Appellant's proffered construction implies a profoundly unreasonable view of the Code: that an employee who elects to *use* compensatory time in the form of time off—and, therefore, never receives a cash payment—never "receive[s]" salary or wages for the overtime she actually worked. Instead, we adopt the only reasonable interpretation of the term "received" (which is, therefore, its clear meaning) in the compensatory time context: that Appellant "received" salary or wages (in the form of compensatory time) for her overtime work at the time it became available for her use as time off from work. *See Bethenergy Mines*, 676 A.2d at 715.

8

We recognize that, through the CBA, the County's detectives (including Appellant) bargained for and secured the right to a monetary payment for unused compensatory time. But critically, that mandatory payment is for *unused* compensatory time, which implies that, under the CBA, employees may choose to use time as it accrues rather than keeping it until separation from employment. Because Appellant chose to accumulate unused compensatory time, she was clearly entitled to receive (and did receive) the compensatory time payment under the CBA. The bargaining embodied in the CBA cannot, however, modify the Code's statutory requirements for pension calculations, which, as we have discussed, require the Board to consider Appellant's compensatory time as having been "received" at the time it became available for Appellant's use.

Next, we must determine when, exactly, the relevant compensatory time became available for Appellant's use and was, therefore, "received." The parties stipulate that the County maintained an "Overtime & Compensatory Time Ledger" for Appellant. (Final Determination, F.F. No. 14.) A copy of the ledger in the record shows hours of compensatory time corresponding to dates on which Appellant worked overtime, and also to dates on which the compensatory time was "[p]osted" to the ledger. (R.R. at 75a.) Many of the "[p]osted" dates are one business day after the date the corresponding overtime was worked.[7] Appellant's compensatory time was, thus, "received *per day*" each time she worked overtime. Section 1701 of the

___

[7] The ledger also shows that much of Appellant's compensatory time was "carried over" from before June 2002, when the ledger began. (R.R. at 75a.) The record contains no copies of earlier ledgers, but we have no reason to suspect—and the parties do not assert—that previous ledger systems substantially differed from that shown in the record.

9

Code (emphasis added).  It is, therefore, "compensation," as that term is defined in Section 1701 of the Code and used in Section 1712(a)(1) of the Code.[8]

Section 1712(a)(1) of the Code allows the Board to include in its calculation only compensation that was "received by [Appellant] during the highest twenty-four months of the last four (4) years of [her] employment"—*i.e.*, during the averaging period.  To apply that standard to the instant case, we first note two facts stipulated by the parties:  (1) all of the compensatory time Appellant accrued was "logged" no later than 2013; and (2) Appellant's averaging period spanned "pay dates ranging from February 2014 to January 2018."  (Final Determination, F.F. No 7.)  Thus, construing the term "received" as we have above,[9] we conclude that all of Appellant's compensatory time was received before—not during—the averaging period.  This conclusion, moreover, is supported by our longstanding holding that "for purposes of pension calculation, compensation received is inexorably tied to when it was due to be paid, not when it was paid."  *Joll v. State Employees' Ret. Bd.*, 632 A.2d 638, 639 (Pa. Cmwlth. 1993).

In *Joll*, a state employee secured, prior to retirement, a salary increase through a labor dispute arbitration, but the increase was paid to the employee only after his retirement.  *Id.*  We held that the salary increase was properly included in the employee's retirement benefit calculation despite that it was not paid until after retirement.  *Id.*  We reasoned that, because the salary increase "was *payable* to [the employee] while he was still . . . employed," it was "actually received" for purposes

---

[8] Because we conclude, based on the record, that the compensatory time was received daily as it was logged, we need not address Appellant's argument that she received the compensatory time during an "official term year."  (*See* Appellant's Br. at 20.)

[9] "[W]here the meaning of a word or phrase is clear when used in one section of a statute, it will be construed to have the same meaning in another section of the same statute."  *Bayview Loan Servicing, LLC v. Lindsay*, 185 A.3d 307, 313 (Pa. 2018).

of the applicable statute as of the date it *should have been* paid, not as of the later date on which it was paid. *Id.* at 639-40 (emphasis added). In reaching that conclusion, we discussed two earlier cases applying this "constructive receipt" concept, both of which held that, for purposes of pension calculation, compensation is "received" when it is earned and/or should have been paid. *Id.*; *see Miller v. State Employees' Ret. Sys.*, 626 A.2d 679, 679 (Pa. Cmwlth. 1993); *Abramski v. Pub. Sch. Employees' Ret. Sys.*, 512 A.2d 106, 108 (Pa. Cmwlth. 1986) (en banc) (attributing compensation to time it "would have been *earned*" but for breach of contract by employer (emphasis added)).[10]

Here, as we have discussed, Appellant's compensatory time became available for her use as it was logged each day. Thus, we cannot agree with Appellant that, under the *Joll* line of cases, her compensatory time was "due" only on her date of retirement. Even though the cash *payment* for unused compensatory time was not due until retirement, Appellant's compensatory *time* itself was earned, due, and actually received as compensation each day as she worked overtime. Thus, contrary to Appellant's argument, *Joll* requires the Board to allocate Appellant's compensatory time exactly as it did—as having been earned and due (and, therefore, constructively "received") daily outside of Appellant's averaging period.

For the foregoing reasons, the Board did not err in determining that Section 1712(a)(1) of the Code prohibited the Board from including Appellant's compensatory time paid out on the occasion of her retirement in its calculation.

---

[10] Although the *Joll* line of cases addressed two different retirement statutes and did not involve the Code, we have repeatedly noted that the constructive receipt concept applies where, as here, the statute at bar presents language substantially similar to that examined in earlier cases. *See Joll*, 632 A.2d at 639-40; *Miller*, 626 A.2d at 681 n.4.

11

Accordingly, we affirm common pleas' order, subject to a material typographical modification.

P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lynn Havelka,               :
          Appellant    :
                      :
      v.                 :    No. 1032 C.D. 2019
                      :
Retirement Board of     :
Allegheny County        :

# **O R D E R**

AND NOW, this 20ᵗʰ day of April, 2020, the order of the Court of Common Pleas of Allegheny County (common pleas), dated June 26, 2019 (Order), is MODIFIED to reflect that common pleas affirmed the decision of the Retirement Board of Allegheny County, issued February 21, 2019, rather than an arbitration award.

Further, the Order is AFFIRMED as modified.

<br>

_____
P. KEVIN BROBSON, Judge